IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KEITH JENNINGS,

                              Plaintiff,


                v.                                    Civil Action No.
                                                      9:01-CV-0077 (LEK/DEP)


NEW YORK STATE TROOPER MARRERO,
and UNITED STATES OF AMERICA


                              Defendants.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

KEITH JENNINGS, *Pro Se*
White Deer, PA

FOR DEFENDANTS:

HON. ELIOT SPITZER              CHARLES J. QUACKENBUSH, ESQ.
Attorney General of the State   Assistant Attorney General
of New York
Attorney for Defendant Marrero
The Capitol
Albany, New York  12224

HON. GLENN SUDDABY              STEPHEN C. GREEN, ESQ.
United States Attorney          Assistant U.S. Attorney
Northern District of New York
Attorney for Defendant United States
of America
100 S. Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff Keith Jennings, who was convicted in this court on drug distribution and money laundering charges and sentenced to life in prison, has commenced this proceeding to challenge the seizure and subsequent forfeiture of $8,870.  Plaintiff contends that the disputed currency was unlawfully seized by defendant Marrero, a New York State Trooper, retained, and ultimately forfeited under the aegis of the federal government without affording him the required due process.  As relief, Jennings seeks an order directing the return of the currency unlawfully seized from him.

After having received submissions, including affidavits and exhibits, from both the federal and state defendants, I issued a decision recommending that the proceeding, which was commenced by the plaintiff as a motion for the return of property, be converted to one asserting claims under 42 U.S.C. § 1983 against Trooper Marrero, and seeking equitable relief against the United States.  *See* Dkt. No. 29.  In that decision, I also recommended that the defendants' submissions be treated as seeking the entry of summary judgment, and that plaintiff be

given an opportunity to offer further evidence and arguments in opposition to those motions.

Plaintiff Jennings has since filed with the court an affidavit, with exhibits, and a memorandum in opposition to defendants' motions.  Dkt. No. 33.  Having reviewed that submission in light of defendants' earlier motion papers and the entire record now before the court, I discern no triable issue of fact regarding plaintiff's section 1983 cause of action against defendant Marrero, and recommend dismissal of all claims against him as a matter of law.  Plaintiff's submissions do, however, raise triable issues concerning whether he was afforded procedural due process in connection with the forfeiture by the United States of the cash in question.  I therefore recommend against the entry of summary judgment dismissing plaintiff's due process claim as against the federal government.

I.      BACKGROUND

The facts surrounding plaintiff's claims are relatively uncomplicated and, for the most part, not controversial.  The facts set forth below have been derived from the parties' submissions, and any inconsistencies in their versions of the relevant events is noted.

3

On March 29, 1997, New York State Trooper Raymond Marrero, who at the time was patrolling the New York State Thruway in the vicinity of Guilderland, New York, pulled over a speeding vehicle driven by an individual identified as Carl Crowley.  Marrero Aff. (Dkt. No. 14) ¶ 3; Amended Complaint (Dkt. No. 5) ¶ 1.  The plaintiff was a passenger in, and the only other occupant of, Crowley's vehicle at the time of the stop.  Marrero Aff. (Dkt. No. 14) ¶ 3. After learning that neither the driver nor passenger Jennings possessed a valid New York State driver's license, Trooper Marrero ordered the vehicle impounded; both the vehicle and its occupants were accordingly transported to a New York State Police barracks for appropriate processing.[1]  Marrero Aff. (Dkt. No. 14) ¶ 3. When the car was impounded its contents were removed; one item which was discovered in the vehicle and subsequently inventoried was a bank bag containing $8,870 in United States currency.  Marrero Aff. (Dkt. No. 14) ¶ 3.  Other than to order the vehicle impounded and its contents

---

[1]      While the body of plaintiff's amended complaint makes no reference to the specifics of the currency impoundment, a transcript of proceedings conducted on March 18, 1999 in this court in connection with a pending criminal prosecution against Jennings describes that encounter.  *See* Amended Complaint (Dkt. No. 5) Attachment. Because the transcript is attached and incorporated by reference into plaintiff's amended complaint, it is properly considered by the court as part of that document. Fed. R. Civ. P. 10(c).

4

inventoried, defendant Marrero had no further involvement in the matter. *Id.* ¶ 4; *see also* Quackenbush Aff. (Dkt. No. 13) Exh. A.

On April 4, 1997, apparently growing out of an investigation regarding plaintiff's drug trafficking activities, the Albany Division of the Federal Bureau of Investigation ("FBI") adopted the seizure of the $8,870 from the New York State Police based upon alleged violations of the Controlled Substances Act, 21 U.S.C. § 881. Gangel Aff. (Dkt. No. 30) ¶ 4. In accordance with the requirements of 19 U.S.C. § 1607(a), written notice of the seizure was sent by the FBI on April 15, 1997 to the plaintiff by certified mail, return receipt requested, addressed to him at 27 Faxton Street, Utica, New York 12501. *Id.* ¶ 5, Exh. 1. Copies of a similar forfeiture notice were also mailed on or about April 15, 1997 to two attorneys in the Utica, New York vicinity, including Edward Kaminski, Esq. and Rebecca Whitman, Esq.[2] Gangel Aff. (Dkt. No. 30) ¶ 6. Documents submitted by the defendants to the court include both the notice sent by certified mail, return receipt requested, to Jennings at the 27 Faxton

---

[2]    The record is unclear as to the roles played by those two attorneys in connection with any forfeiture and/or criminal proceedings involving the plaintiff. In its papers the United States refers to Attorney Whitman as Jennings' "attorney of record." Gangel Aff. (Dkt. No. 30) ¶ 6. In his reply affidavit Jennings acknowledges having been represented at some point by Attorney Whitman. *See* Jennings Aff. (Dkt. No. 28) ¶ 4.

5

Street address and a signed receipt bearing a partially legible signature which appears to be in the plaintiff's name.[3]  *See* Quackenbush Aff. (Dkt. No. 13) Exh. A; Gangel Aff. (Dkt. No. 30) Exhs. 1, 2.  Jennings denies ever receiving that notice, and states that he did not reside at 27 Faxton Street at the time it was delivered.  *See* Jennings Aff. (Dkt. No. 28) ¶¶ 1-3. Plaintiff Jennings also denies receiving notice from Attorney Whitman regarding the forfeiture, but does not make any similar denial with regard to Attorney Kaminski.  *See id.*

Notice of seizure of the $8,870 was initially published in the New York Times, as a newspaper of general circulation within the Northern District of New York, on May 4, 1997, and again on May 11 and 18, 1997. Gangel Aff. (Dkt. No. 30) ¶ 7, Exh. 5.  Those publications advised that the last day to file a claim regarding the currency was June 2, 1997.  *Id.*

Apparently having been alerted to the forfeiture, plaintiff appeared on June 4, 1997 at the Albany FBI office and attempted to file a claim and a cost bond to challenge the contemplated forfeiture.  Gangel Aff. (Dkt. No. 30) ¶ 8.  After being advised that he was required to provide a cashier's check in order to lodge a claim with respect to the seized

---

[3]      As will be seen, plaintiff also denies that the signature on the return receipt is his.  *See* p. 18, *post.*

6

currency, Jennings left the office and did not return or make any further efforts to contest the forfeiture. *Id.* In light of the fact that the FBI did not receive any timely and properly filed claims regarding the currency, the money was administratively forfeited by the FBI on September 10, 1997. *Id.* ¶ 9.

Following a jury trial in connection with charges lodged by indictment, plaintiff was convicted in this court on March 17, 1999 of participation in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) and (c); conspiracy to distribute cocaine, cocaine base, and marijuana, and aiding and abetting the distribution of those three controlled substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possession with intent to distribute, and distribution, of cocaine, in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute, and distribution, of cocaine base, in violation of 21 U.S.C. § 841(a)(1); and money laundering, in violation of 18 U.S.C. § 1956(h). The jury's verdict and subsequent conviction included findings that Jennings was liable for forfeiture of assets including, *inter alia*, the sum of $1.5 million. As a result of his conviction, plaintiff was sentenced on March 10, 2000 by Senior District Judge Howard G. Munson, principally to concurrent terms

of life in prison, and is currently serving his sentence at the United States

Penitentiary at Allenwood, located in White Deer, Pennsylvania.

II.    PROCEDURAL HISTORY

Plaintiff commenced this proceeding on January 18, 2001 by the

filing of a motion styled as seeking the return of seized property pursuant

to Rule 41(e) of the Federal Rules of Criminal Procedure.[4]  *See* Dkt. No.

1.  Upon routine review of the complaint and plaintiff's *in forma pauperis*

application, on March 8, 2001, an order was entered directing the filing of

an amended pleading clarifying the issues of custody and forfeiture of the

currency in question and the connection between the traffic stop at issue

and subsequent administrative forfeiture proceedings.  Dkt. No. 4.  An

amended pleading was subsequently submitted by the plaintiff in

response to that order, and was filed on March 27, 2001.  Dkt. No. 5.

While plaintiff's original motion named only Trooper Marrero as a

respondent, plaintiff's later submission also named the United States of

America.  *Id.*

On June 4, 2001 an answer, attorney's affirmation, and affidavit from

defendant Marrero were received and filed by the court.  Dkt. Nos. 12-14.

---

[4]    Former Rule 41(e) was renumbered in 2002 as Federal Rule of Criminal
Procedure 41(g).

An affidavit of Peter A. Gangel, Chief Division Counsel for the FBI's Albany Division, as well as a supporting memorandum, were later received from counsel for the defendant United States on July 10, 2001, although those materials were originally misdocketed by the court.[5]

On September 29, 2004 I issued a decision recommending that plaintiff's application be treated as one asserting claims brought under 42 U.S.C. § 1983 with regard to Trooper Marrero, and as seeking equitable relief against the United States in connection with the forfeiture.  Dkt. No. 29.  In that decision, I also recommended that the submissions from the state and federal defendants be treated as seeking the entry of summary judgment, dismissing those claims, and that Jennings be afforded additional opportunity to respond to those submissions.  *See id.*  Since that time plaintiff has submitted a affidavit with the exhibits, as well as a memorandum in opposition to that motion.  Dkt. No. 33.

This matter, which is now ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28

---

[5]     Those responsive papers, which are now docketed in this action as numbers 30 and 31, were originally filed by the clerk and listed as relating to *Keith Jennings v. United States of America*, Civil Action No. 9:01-CV-0177 (LEK/DEP), a separate case brought by the plaintiff which, as can be seen, by coincidence bears a strikingly similar title and civil action number.

U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   <u>DISCUSSION</u>

    A.   <u>Procedural Posture</u>

This action was commenced after the criminal proceedings in this court against the plaintiff were concluded.  As such, Jennings' resort to Rule 41(e) of the Federal Rules of Criminal Procedure as a vehicle for seeking recovery of the forfeited currency at issue was no longer appropriate, and this action instead should be recharacterized and construed as requesting relief more appropriate to the circumstance, including under 42 U.S.C. § 1983 as against defendant Marrero, and plenary, equitable relief from the federal government.  *See United States v. David*, 131 F.3d 55, 61 (2d Cir. 1997); *Onwubiko v. United States*, 969 F.2d 1392, 1397 (2d Cir. 1992).[6]

Ordinarily, when an action such as this challenges the constitutional propriety of an administrative forfeiture proceeding, the court's determination turns upon resolution of the question of whether proper

---

[6]    The holding in *Onwubiko* was later found by the Second Circuit in *Polanco v. U.S. Drug Enforcement Administration*, 158 F.3d 647 (2d Cir. 1998) to have been implicitly overruled by the Supreme Court.  The case retains its vitality, however, to the extent of the general proposition for which it is cited.

notice of the forfeiture was given.[7]  This case, however, presents what is

in essence a hybrid claim.  One portion of plaintiff's motion, when liberally

construed, could be interpreted as challenging the lawfulness of the

actions of state authorities, including Trooper Marrero, in seizing of the

monies at issue.  The second prong of the motion presents a more

traditional challenge to the administrative forfeiture proceedings which

resulted in the divestiture of plaintiff's interest in the currency at issue.

Under these circumstances, I recommend that plaintiff's claims against

Trooper Marrero be regarded as challenging actions taken by him under

color of state law, pursuant to 42 U.S.C. § 1983, in seizing and retaining

the monies at issue, and that the remaining portion of the claim be treated

as seeking equitable relief in conjunction with Jennings' challenge to the

procedural propriety of the forfeiture.

    B.    Summary Judgment Standard

Although the legal underpinnings of plaintiff's claims and the

procedural posture of the case are open to various viewpoints, the matter

is being treated as being before the court on motion by the defendants

seeking summary judgment of plaintiff's claims as a matter of law.

_____

[7]       See pp. 16-18, post.

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).  The moving party has the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the nonmoving party's claim.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4.  Once that burden is met, the opposing party must show, through affidavits or otherwise, that there is a material factual issue for trial.[8]  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  When deciding a summary judgment motion, the court must resolve any ambiguities and draw all inferences from the facts

---

[8]     A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than merely metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

in a light most favorable to the nonmoving party. *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

      C.    Merits Of Plaintiff's Claims

As was previously noted, there are two discrete components of plaintiff's claims in this action. The first surrounds the initial seizure and retention of the currency at issue. The second embraces plaintiff's complaints regarding the subsequent disposition of that currency.

      1.    Seizure

According to the evidence in the record – evidence which plaintiff does not appear to dispute – the currency seized in this matter was found in a vehicle which was ultimately impounded by defendant Marrero. The circumstances leading to that impoundment were set in motion when Trooper Raymond J. Marrero conducted a traffic stop of a 1995 Plymouth Neon in which the plaintiff was a passenger. Gangel Aff. (Dkt. No. 30) ¶ 3. Since neither Jennings nor the driver and only other passenger of the vehicle possessed a valid driver's license, the vehicle was impounded,

and a routine inventory search or its contents was conducted.  Marrero

Aff. (Dkt. No. 14) ¶ 3.  As a result of that search a U.S. Mint bag

containing $8,870 in United States currency was recovered and later

transferred to the Albany Division of the Federal Bureau of Investigation

("FBI") for commencement of forfeiture proceedings in light of plaintiff's

apparent drug trafficking activities.  *Id.* ¶¶ 3-4*.*

        There is no evidence in the record now before the court to suggest

any impropriety associated with the stop of the vehicle ultimately

impounded, or for directing its impoundment given the situation

encountered by Trooper Marrero.  Under well established Fourth

Amendment jurisprudence, no Fourth Amendment violation occurs from

the seizure and inventorying of an impounded vehicle's contents under

such circumstances.  *Colorado v. Bertine*, 479 U.S. 367, 371-76, 107 S.

Ct. 738, 741-43 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 372-

76, 96 S. Ct. 3092, 3098-100 (1976).

        Since the plaintiff has submitted no evidence drawing into question

the constitutional validity of the initial stop of the vehicle or its subsequent

inventory search, I therefore recommend the entry of summary judgment

dismissing the portion of plaintiff's claim which asserts a section 1983

cause of action against Trooper Marrero based upon those actions.

> ## 2.     Forfeiture Proceedings

The primary thrust of plaintiff's claims in this action appears to center upon the proceedings which followed Trooper Marrero's actions and resulted in the forfeiture of the currency at issue in this case, including its conveyance by state authorities to the FBI.  The uncontradicted evidence in the record reflects that the currency was transferred into the custody of the FBI on April 4, 1997, and that thereafter the administrative proceedings ultimately leading to its forfeiture were commenced and conducted.  *See* Quackenbush Aff. (Dkt. No. 13) Exh. A. According to his affidavit, Trooper Marrero had no further involvement in the matter, and specifically was not involved in either the transfer of the disputed currency to the FBI or its subsequent forfeiture.  *See* Marrero Aff. (Dkt. No. 14) ¶ 4.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct.

1282 (1978)).  In order to prevail on a section 1983 cause of action

against an individual, a plaintiff must show some tangible connection

between the constitutional violation alleged and that particular defendant.

*See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Since there is no evidence in the record to support a finding of

defendant Marrero's personal involvement in the forfeiture of the currency

at issue, including its transfer into the hands of the FBI, following his stop

and impoundment search of the vehicle in which plaintiff was riding on

March 29, 1997, I recommend dismissal of that portion of plaintiff's claim

against him.  *See United States v. $37,780 in United States Currency*,

920 F.2d 159, 161-63 (2d Cir. 1990) (holding that seizure and forfeiture

are two distinct events).

I now turn to plaintiff's claims against the United States growing out

of the administrative forfeiture.  Under the governing administrative

forfeiture procedures, if the amount at issue in a civil forfeiture action is

less than $500,000, the federal government may proceed administratively.

*See* 19 U.S.C. § 1607; *Boero v. Drug Enforcement Administration*, 111

F.3d 301, 304 (2d Cir. 1997).  An administrative forfeiture commences

with the publication of notice.  *Id.*  Within twenty days of the first

16

publication of notice, a claimant may contest the forfeiture by filing a claim and a cost bond with the agency overseeing the forfeiture.  *See* 19 U.S.C. § 1608; *Boero*, 111 F.3d at 304.  If the claimant fails to file a claim and cost bond, administrative forfeiture occurs by default.[9]  *See* 19 U.S.C. § 1609; *Boero*, 111 F.3d at 304.

As the government has argued, the courts have been emphatic in their rejection of collateral challenges to administrative forfeiture actions by parties who did not administratively appear and contest forfeiture.[10] *See*, *e.g.*, *United States Drug Enforcement Agency v. One 1987 Jeep Wrangler Automobile VIN # 2BCCL8132HBS12835*, 972 F.2d 472, 479 (2d Cir. 1992) ("once the administrative process has begun, the district court loses subject matter jurisdiction to adjudicate the matter in a peripheral setting such as a Rule 41(e) motion").  Federal courts have no jurisdiction to review the merits of an administrative forfeiture unless the

---

[9]     On the other hand, the filing of a claim and bond halts the administrative procedure and compels the federal agency involved to refer the matter to the United States Attorney for initiation of judicial forfeiture proceedings.  *See Boero*, 111 F.3d at 304-05.

[10]     Although the government cites *Rodriguez v. United States Department of Justice*, No. 99-6337, 2001 U.S. App. LEXIS 2934 (2d Cir. 2001) in support of its argument, it does so in violation of the Second Circuit's strict prohibition against the use of unpublished opinions as precedent, other than for purposes of law of the case, collateral estoppel or res judicata purposes.  *See* Second Circuit Court of Appeals Rule § 0.23.  I therefore have not considered that case as supportive of its position.

property at issue was taken improperly, including through a defective claim and bond procedure.  *Id.* at 480; *see also Boero*, 111 F.3d at 305.

While such collateral challenges to forfeiture proceedings are generally not entertained, federal courts nonetheless retain limited jurisdiction in administrative forfeiture matters to determine whether the forfeiture was procedurally proper.  *See*, *e.g.*, *Polanco v. U.S. Drug Enforcement Administration*, 158 F.3d 647, 651-52 (2d Cir. 1998); *Boero*, 111 F.3d at 305-07.  When proper notice of the forfeiture has not been afforded to each party with a known interest in the property, the court is empowered to restore the claimant's right to a hearing and consider the party's challenge to the forfeiture.  *Id.*

In this case the record before the court, including the defendants' submissions, reflects the existence of genuine issues of material fact which must be resolved before plaintiff's procedural due process claims can be adjudicated.  Those issues include whether plaintiff was actually afforded proper notice of the forfeiture proceeding, a fact which he denies.  Issues also exist surrounding the plaintiff's efforts on June 4, 1997 to contest forfeiture.  The letters and publications related to the matter advised that the last date to file a claim regarding the money was June 2,

1997.  *See*, *e.g.*, Gangel Aff. (Dkt. No. 30) Exh. 1.  Yet, the government's

own submissions indicate that the FBI was prepared on June 4, 1997 to

accept Jennings' appearance and challenge of the contemplated forfeiture

even though it was two days late.  *Id.* ¶ 8.  Those filings reflect that on that

date the plaintiff offered cash in the required amount of $887 to support

his claim to the currency, but was instructed that the FBI could not accept

the cash bond, and that instead he would be required to return with a

cashier's check in that amount in order to effectuate his claim to the

forfeited property.  *Id.*  This position, however, is inconsistent with the

notices sent by the FBI regarding the forfeiture, which advised, in relevant

part, as follows:

> If you want to contest the seizure or forfeiture of
> the property in court, you must file a claim of
> ownership and a bond in the amount of $887 with
> the FBI by June 2, 1997.  The bond may be in cash
> or a cashier's check payable to the U.S.
> Department of Justice or provide [sic] a surety.

Gangel Aff. (Dkt. No. 30) Exh. 1 (emphasis supplied).

Under these circumstances, I find the existence of genuine issues of

material fact which must be resolved before plaintiff's procedural due

process claim against the United States can be resolved as a matter of

law.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

In view of the fact that the criminal proceedings against him have

been completed, plaintiff's due process claim, which is presented in the

form of a motion for the return of seized property, is properly construed as

asserting a claim under 42 U.S.C. § 1983 against defendant Marrero

arising from his actions in stopping the vehicle in which Jennings was

riding and seizing its contents, and seeking plenary relief of an equitable

nature against the United States challenging the subsequent forfeiture of

those funds.  Construed in this light, with the matter now coming before

the court on motion for summary judgment, I recommend dismissal of

plaintiff's claims against defendant Marrero based upon Jennings' failure

to establish either a constitutional violation associated with the initial

seizure of the cash in question or Trooper Marrero's personal involvement

in the transfer of the disputed monies to the FBI and the subsequent

forfeiture proceedings.  I recommend against the entry of summary

judgment dismissing plaintiff's claim against the United States alleging

deprivation of his due process rights, however, in view of the existence of

genuinely disputed issues of material fact regarding whether plaintiff

received proper notice of the proceedings and an adequate opportunity to

appear and contest the forfeiture.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for summary judgment [Dkt. No. 12-1] be GRANTED with regard to plaintiff's claims against defendant Marrero, and that all claims in this action against that defendant be DISMISSED, but that the motion of the defendant United States of America for the entry of summary judgment dismissing plaintiff's complaint as against that defendant [Dkt. No. 30-1] be DENIED in all respects, and that the matter instead be set down for trial to address the question of whether plaintiff received notice of the administrative forfeiture proceedings at issue, and if not, to allow his challenge to the contested forfeiture to be heard.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the parties by regular mail.

Dated:      March 21, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\ISSUES\miscellaneous\forfeiture\jennings4.wpd